The Chancellor.
This is an application, on behalf of the complainants, for the appointment of a receiver of the rents and profits of mortgaged premises. There are four mortgages on the premises in question. The complainants hold the fourth and last mortgage, and upon their bill filed in this cause a decree pro confesso has been taken against the defendants. A master has reported the amount *41 due upon the several mortgages, and a decree for sale has been made.
I am not willing to adopt the rule as laid down in Warner v. Gouverneur’s Executors, 1 Barb. S. C. R. 38. In that case, Edmonds, Justice, says: “ The rule in these cases, where the mortgagee has not taken care to keep down the accruing interest by securing a lien on the rents and profits, is to interfere with the mortgagor’s possession prior to a decree of foreclosure, and appoint a receiver of the rents and profits when the premises are an inadequate security for the debt secured by the mortgage, and the mortgagor or other person in possession, who is personally liable for the debt, is not of sufficient ability to answer for the deficiency.” This is undoubtedly the rule in New York, as established in the first reported case in that state of the Bank of Ogdensburgh v. Arnold, 5 Paige 39, and supported by subsequent cases. The Vice Chancellor, in Shotwell v. Smith, 3 Edw. Ch. Rep. 588, states the rule to be, “ that when premises are an inadequate security, and the mortgagor is insolvent, a receiver will be allowed.” The case of Sea Insurance Co. v. Stebbins, 8 Paige 566, is to the same effect.
The rule so broadly laid down is not sustained by precedents, and is not free from objections. No distinction is drawn between a first and subsequent mortgagee. Their rights are entirely different. The first mortgagee has the legal right to the' rents and profits; but a court of equity has been reluctant to appoint a receiver upon his application, for the reason, that he has a remedy at law by ejectment, by which he may get into the receipts of the rents and profits. The appointment of a receiver, it is true, is a more expeditious remedy; but it is a remedy which, at times, may operate as a great hardship. It is attended with expense, and in the case of mortgages should be exercised with great caution. The second mortgagee is better entitled to the remedy, on the ground, that his is only an equitable mortgage. As he has no right to the *42 possession at law, as against the first mortgagee, there seems a propriety, if the first mortgagee neglects or refuses to take possession, that equity should interfere on behalf of the second mortgagee, and secure the rents and profits. But suppose the mortgagor, or his tenant in possession, is in good faith appropriating the rents and profits to keep down the interest of a first mortgage, a court of equity will not, on the application of a second mortgagee, appoint a receiver, although it may appear that the mortgage premises are an inadequate security, and the mortgagor insolvent. Where, upon the application of a subsequent mortgagee, a receiver is appointed, it is without prejudice to any prior mortgagee or other encumbrancer, and the receiver will be directed to keep down the interest upon prior encumbrances. See Bryan v. Cormick, 1 Cox’s Eq. Ca. 422; Dalmer v. Dashwood, 2 Ib. 378.
In Phipps v. Bishop of Bath and, Wells, 2 Dickens 608, which is prior in time to the cases in Cox, the Lord Chancellor refused the application of a second mortgagee for the appointment of receiver. He said, a second mortgagee, the mortgagor living, cannot have a receiver without the consent of the first mortgagee, because the court cannot prevent the first mortgagee from bringing an ejectment against the receiver, as soon as he is appointed. And in Berney v. Sewell, 1 Jac. and Walk. 627, a case nearly forty years after the case in Dickens, Lord Eldon held, that the first mortgagee cannot have a receiver appointed; but that a subsequent mortgagee might, if the prior mortgagee was not in possession, and so that the appointment be made without prejudice to his taking possession. The Lord Chancellor’s language is very decided: “The rule about receivers is very clear, a mortgagee who has the legal estate cannot have a receiver; an equitable mortgagee may, but he cannot if the first is in possession. I remember a case where it was much discussed, whether the court would appoint a receiver, when it appeared by the bill that there was a prior mortgagee, who was not in pos *43 session. I have a note of that case% there Lord Thurlow made the appointment without prejudice to the first mortgagee’s taking possession; and that was afterwards followed by Lord Kenyon.
The rule, as laid down by the New York cases, has never been adopted by the Court of Chancery in this state. It has not been the practice in this court to appoint a receiver in a mortgage case simply on the ground of inadequacy of the mortgaged premises to pay the debt and the mortgagor’s being insolvent. This court has gone upon the ground, that where a man takes a mortgage security for his debt, and permits the mortgagor to remain in possession, if there is a default in payment, the mortgagee must appropriate the property, in the usual way, to the payment of his debt. If he is a first mortgagee, and wishes possession, he must take his legal remedy by ejectment. If he is a second mortgagee, he takes hia security with the disadvantages of a second encumbrancer. The application for receivers in mortgage cases has been very unusual in this court. There is no reported case. There was an application to Chancellor Pennington, and it was successful ; but the circumstances of the caso I have not been able to ascertain. Subsequently, Chancellor Halsted, in the case of Best v. Schermier, 2 Halst. C. R. 154, refused a like application on behalf of a mortgagee, on the ground, that such had not been the practice of this court.
Upon these authorities, and in accordance with the practice of this court, I am unwilling to adopt the rule, that in an ordinary case, the mere inadequacy in value of the mortgaged premises and insolvency of the mortgagor are a sufficient foundation for the appointment of a receiver. A mortgagee takes his security with full know'ledge of its value, and if he takes an inadequate security it is his own fault. If the buildings have been burnt down, or have been permitted to decay, or waste committed, and the property has depreciated in value through the fault or negligence of the mortgagor or tenant in possession, or *44 where there is any act on the part of the mortgagor or snch tenant which shows fraud on his part, or makes him chargeable with bad faith in misappropriating the rents and profits for other purposes than that of keeping down the interest on the encumbrances, in such cases the court may very properly appoint a receiver. The power should be exercised with great caution by the court, and only in cases where there appears a necessity for it.
In the present case, it appears quite clear that the mortgaged premises are an inadequate security to pay the mortgaged debt. The insolvency of the mortgagor is admitted. The premises are now in the possession of Jabez Hathaway and his wife, the wife holding the title to the equity of redemption. They are also insolvent. The equity of redemption was conveyed to Mrs. Hathaway in October, 1854. The petitioner alleges, that, when the premises were conveyed to Mrs. Hathaway, it was upon the agreement, that the complainants’ two thousand dollars mortgage should be reduced to fifteen hundred dollars ; and he says, that in consequence of this, he delayed enforcing the payment of his mortgage. This is denied by Hathaway, but the evidence he himself produces shows that the allegation is not without foundation. He produces the memorandum of the purchase, by which it aj>pears that twenty-five hundred dollars were to remain on mortgage upon the premises. The amount of purchase money was to be thirty-six hundred dollars. It does not appear that one dollar of the purchase money has ever been paid. The strong presumption is that it has not. Hathaway has had the benefit of his own affidavit upon this application, and that of the person from whom the conveyance was made to his wife. If any of the purchase money had been paid, they would not, as the case stood before the court, have omitted stating so important a fact. In addition to this, Hathaway has lately offered, if any one will pay off the encumbrances, to give a deed for the equity of redemption, and to deliver up the possession after he has reaped the present crops.
*45 There is a peach orchard upon the premises, and the crop of peaches is shown to he worth three or four hundred dollars. The application is only for a receiver to take charge of the peach crop.
I think the circumstances under which Hathaway and wife hold the possession of the property entitle the petitioners to have a receiver.
Let an order he made for Hathaway to give security to the amount of three hundred dollars for any deficiency to that extent in paying the mortgage encumbrances. If he refuses to give such security, let a receiver be named.